UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARC BARRERA,

        Plaintiff,

v

CITY OF MT. PLEASANT, ISABELLA COUNTY,
CARY MURCH, JEFF THOMPSON,
JACOB EGGERS, CHRISTOPHER CLULEY,

        Defendants.

                                                    /

Case No. 1:19-cv-11807
Honorable Thomas L. Ludington

**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT
AND DISMISSING COMPLAINT**

On June 18, 2019, Plaintiff Marc Valentino Barrera filed a complaint against Defendants the City of Mt. Pleasant, Isabella County, Officer Carey Murch, Officer Jeff Thompson, Correctional Officer Jacob Eggers, and Correctional Officer Christopher Cluley. ECF No. 1 at PageID.3-4. Plaintiff's complaint provides four counts: false arrest/false imprisonment by all Defendants, supervisory liability by the City of Mt. Pleasant and Isabella County, gross negligence by all Defendants, and intentional infliction of emotional distress by Defendants Murch, Thompson, Eggers, and Cluley. *Id*. at PageID.8-22.

All the Defendants have now filed motions for summary judgment. For the following reasons, the motions will be granted and the complaint dismissed.

**I.**

**A.**

On November 20, 2016, Plaintiff Marc Barrera and Edison Pelcher were drinking alcohol at a house in Mt. Pleasant. ECF No. 32-5 at PageID.1874-1875. They eventually drove to 1409 Granger Street, a house rented by Plaintiff's girlfriend's cousin, Jordan Pelcher. *Id*. at

PageID.1874; ECF No. 32-3 at PageID.1823. At the Granger house, Plaintiff and Pelcher were joined by Joaquin Garcia and Plaintiff's girlfriend, Morgan Guerrero. *Id.* at PageID.1876. While there, Plaintiff consumed alcohol, marijuana, and cocaine. *Id.* at PageID.1874.

During this time, Officer Murch of the Mt. Pleasant Police Department ("MPPD") was patrolling the area. ECF No. 32-3 PageID.1813. At approximately 1:00 a.m., Murch passed 1409 Granger and recognized a black Buick. He believed it was the same car that he had previously pulled over twice, resulting in drug-related arrests. *Id.* at PageID at 1813-1814. The address was familiar to Murch because police had responded to approximately twenty incidents there that year. *Id.* at PageID.1822-1823. Murch ran the license plate through the Law Enforcement Information Network system ("LEIN") to confirm that it was the same vehicle. *Id.* at PageID.1814, ECF No.37 at PageID.2180. The LEIN search confirmed that the vehicle was the same one he had interacted with previously. Murch noted that the registered owner, Robert Sheahan, did not have a valid driver's license. *Id.* at PageID.1814. Murch parked in a nearby lot where he could observe the vehicle parked in the driveway. *Id.* at PageID.1815.

Murch saw the vehicle reverse out of the driveway and leave the property. ECF No. 28-2 at PageID.1335. Joaquin Garcia drove the vehicle, Edison Pelcher sat in the passenger seat, and Morgan Guerrero and Plaintiff sat in the backseat. ECF No. 28-3 at PageID.1425. Murch followed the vehicle between a quarter and a half-mile and initiated a traffic stop for speeding. ECF No. 28-4 at PageID.1494-1495.

Murch approached the vehicle and requested Garcia's driver's license. However, Garcia only offered his high school ID. Murch sought identification from the other passengers to find a licensed driver to whom he could release the vehicle. *Id.* at PageID.1499. Pelcher provided identification, but Plaintiff and Guerrero did not. *Id.* at PageID.1499-1500. Murch returned to his

patrol vehicle with Garcia's high school ID and Pelcher's ID to run their names through LEIN and to request backup. *Id*. at PageID.1500-1501.

When Officers Thompson and Straus arrived about ten minutes later, Murch placed Garcia under arrest for driving without a license. *Id*. at PageID.1503-1504, ECF No. 28-9 at PageID.1721. Pelcher was on probation and had a Preliminary Breath Test ("PBT") of 0.27. The officers documented his PBT and released him after they were unable to contact his probation officer. ECF No. 28-5 at PageID.1598.

Thompson questioned Guerrero about her identity and she initially lied about who she was. *Id.* at 1597. The officers used the name Pelcher had provided, ran Guerrero's name through the LEIN database, and discovered there were outstanding arrest warrants for her. ECF No. 32-4 at PageID.1822. Thompson testified that it was his belief that Guerrero lied about her identity because of her arrest warrants, not because she wished to protect Plaintiff. ECF No. 28-5 at PageID.1568. Officers learned through Pelcher that Plaintiff was in fact Guerrero's boyfriend. ECF No. 32-4 at PageID.1838. Thompson testified that "[a]t some point Officer Straus was talking to Pelcher, and during his conversation my understanding is Pelcher told him that Morgan should know who he is, that's her boyfriend Marc." ECF No. 28-5 at PageID.1597.

When confronted Guerrero claimed that she had met Plaintiff on Facebook but did not know his Facebook name. ECF No. 28-5 at PageID.1568. Thompson testified that:

> She initially was telling me she didn't know his name and then when confronted with that she said, yeah, that's, that's how I know him by. How do you know him; she met him through Facebook. Okay, what's his name on Facebook; I don't know, that's not my boyfriend.

*Id*. at PageID.1568. Thompson further testified that there was no indication that Plaintiff had threatened Guerrero to lie about his identity to police. *Id*. at PageID.1569.

Plaintiff refused to identify himself to Murch and Thompson. ECF No. 32-5 at PageID.1881. Thompson requested that Plaintiff exit the vehicle and informed Plaintiff that he would conduct a Terry pat-down to check for weapons. ECF No. 35-2 at PageID.1881. Plaintiff consented stating "you can get a pat-down for you and your officer's safety to make sure I don't have any weapons on me but don't go in my pockets". *Id*. at PageID.1881. Thompson felt a bulge in Plaintiff's pockets. Based on his experience as a narcotics officer, Thompson believed the bulge to be cash and baggies. ECF No. 32-4 at PageID.1842. He removed the items and found approximately 1,000 dollars in cash and eleven plastic baggies. ECF No. 32-4 at PageID.1842. Thompson placed both items back in Plaintiff's pocket. *Id*. at PageID.1842.

Plaintiff testified in his deposition that when the officers questioned him about the cash, he told them it was "per cap" money. ECF No. 28-2 at PageID.1357. "Per Capita" or "per cap" are monthly funds distributed to tribal members from the profits generated by casinos operated under the National Indiana Gaming Regulatory Act. ECF No. 32 at PageID.1767. Plaintiff claims that he did not tell Thompson that it was *his* per cap money because he is not a tribal member. ECF No. 32-5 at PageID.1881. Instead, Plaintiff claims that he only told Thompson that it was per cap money. ECF No. 32-5 at PageID.1884. However, Thompson believed that Plaintiff claimed the per cap money was his. ECF No. 32-4 at PageID.1845.

Officers believed that Mr. Sheahan, the registered owner of the vehicle, was Native American. ECF No. 28-5 at PageID.1577. Suspecting that Plaintiff may be Sheahan and that he was in possession of per cap money, officers called tribal officer Dave Feger to the scene. ECF No. 28-4 at PageID.1514. However, after arriving at the scene, Feger confirmed that he was not familiar with Plaintiff. ECF No. 32-3 at PageID.1822.

Officers placed Plaintiff in the back of Straus's patrol car and transported him to Isabella County Jail. Murch testified that at the time, Plaintiff was not under arrest, nor was he placed in handcuffs. *Id*. at 1524-1525, 1527.

> Q. Okay. And you -- at that point in time when Mr. Barrera is being transported to jail is he under arrest?
> A. No.
> Q. Okay. Why not?
> A. Because we don't have all the elements of the crime to arrest him.

ECF No. 32-3 at PageID.1825. Thompson's testimony is similar. ECF No. 28-5 at PageID.1611. ("Was he arrested for a felony at that time when we took him to the jail, no…") However, Plaintiff claims that an officer told him that he was under arrest for resisting and obstructing arrest. ECF No. 32-5 at PageID.1885, 1888.

When officers arrived with Plaintiff, Officers Cluely and Eggers were working. ECF No. 35-2 at PageID.1886; ECF No. 28-7 at PageID.1690. Eggers testified in his deposition that Plaintiff was handcuffed when he entered the jail. *Id*. at PageID.1717. It was the jail's policy to search every person who entered the jail regardless of their reason for entering the facility. *Id*. at PageID.1656. During the pat-down, it was policy that the correctional officers would remove the subject's top layer of clothing from their upper body. *Id*. at PageID1680.

Cluley conducted the pat-down of Plaintiff while Eggers and the MPPD officers waited in the master control area. ECF No. 28-7 at PageID.1689. Plaintiff's sweater was removed, and his personal belongings were placed in a bucket. ECF No. 32-5 at PageID.1888. During the pat-down, Eggers noted a strong marijuana odor and a plastic rustling sound. EFC No. 28-8 at PageID.1719.

Removing the sweater revealed that Plaintiff had his name tattooed on his arms, which Eggers entered into the Offender Tracking Information System (OTIS). ECF 28-7 at PageID.1690. Thompson also ran the name through dispatch and discovered that Plaintiff was a parole absconder

and had warrants for his arrest. ECF No.28-4 at PageID.1535-1536. While Thompson and Eggers checked his name against the databases, Cluley attempted to fingerprint Plaintiff, but Plaintiff refused. ECF No. 28-5 at PageID.1593. Plaintiff and the jail personnel were advised by Thompson that Plaintiff was formally under arrest and that he would be fingerprinted. *Id.* at 1536-1537. Cluley verified his identity through fingerprints. ECF No. 28-8 at PageID.1719. Plaintiff was strip-searched by Cluley, who discovered a bag containing marijuana and a second smaller bag containing cocaine under Plaintiff's testicles. *Id.* at PageID.1719.

**B.**

Following his arrest, Plaintiff was charged with 5 counts: delivery/manufacture of less than 50 grams of cocaine, heroin, or another narcotic, MCL 333.7401(2)(a)(iv); possession of less than 25 grams of cocaine, heroin, or another narcotic, MCL 333.7403(2)(a)(v); delivery/manufacture of marijuana, MCL 333.7401(2)(d)(iii); possession of marihuana/synthetic equivalents, MCL 333.7043(2)(d); and bringing contraband into a correctional facility, MCL 800.281(3).

**1.**

In the trial court, Plaintiff filed a motion to suppress the drug evidence that the officers found during the strip search, citing a violation of his Fourth Amendment rights. ECF No. 28-9 at PageID.1722. The court found that, "the authorities acted in a responsible manner by taking [Plaintiff] in for the purpose of trying to take Plaintiff's fingerprints." ECF No. 44-4 at PageID.2408. The court denied the motion and the case proceeded to trial. ECF No. 28-9 at PageID.1722.

The jury returned a guilty verdict against Plaintiff on two of the charged counts, intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(iv), and intent to deliver marijuana, MCL 333.7401(2)(d)(iii). *Id.* at PagID.1721. Plaintiff was sentenced to 57 months to 40 years for

intent to deliver cocaine and 4 to 8 years for intent to deliver marijuana. ECF No. 32-14 at PageID.2016.

**2.**

Plaintiff appealed to the Michigan Court of Appeals which overturned his conviction. ECF No. 28-9 at PageID.1729. The Court of Appeals focused on two issues, the lack of probable cause to arrest defendant and fruit of the poisonous tree. ECF No. 32-15 at PageID.2025. With respect to probable cause the court reasoned that:

> Based on the totality of the circumstances before him at the time, Thompson conducted a patdown of defendant. During that patdown, Thompson came upon "a bulge" in defendant's pocket. Presumably operating under the assumption that he could legally remove the bulge from defendant's pocket, Thompson did so, and seized empty plastic sandwich baggies and $1,000. Even if we were to conclude that Thompson's seizure of the baggies and cash was legal, we cannot conclude that Thompson had probable cause to further detain defendant and transport him to jail for fingerprinting.
>
> By transporting defendant from the traffic stop to the jail, Thompson arrested defendant. *See Hayes*, 470 U.S. at 816. As noted, the facts did not support a finding of probable cause to arrest. It was undisputed that no drugs or drug paraphernalia were found on defendant's person or in the vehicle. The only items located on defendant's person were the plastic baggies and the cash. Neither of these items was contraband or directly incriminating. Furthermore, none of the vehicle occupants' criminal activities implicated defendant. Finally, the fact that defendant may have lied or misrepresented that he was a tribal member did not directly speak to whether he may have been engaged in illegal activity.
>
> Taken together, the circumstances surrounding defendant's arrest did not give rise to probable cause. Although Thompson and Murch were undoubtedly suspicious of the large number of baggies, the cash, the lies told, and other criminal activities, such suspicions would not "justify a fair-minded person of average intelligence in believing that the suspected person [i.e., defendant] had committed a felony." *Nguyen*, 305 Mich. at 751-752.

The Court of Appeals determined that the drugs discovered on Plaintiff were the result of an illegal search and that the trial court should have granted Plaintiff's motion to suppress. ECF No. 32-15 at PageID.2026. The court vacated Plaintiff's convictions and sentence. *Id.* at PageID.2027.

Plaintiff subsequently filed his complaint in this Court, claiming that Defendants falsely arrested him. Defendants Cluley, Eggers, and Isabella County filed a Motion for Summary Judgment on March 23, 2020. ECF No 28. Defendant City of Mt. Pleasant filed a Motion for Summary Judgment on April 2, 2020. ECF No. 32. Defendants Murch and Thompson filed a separate Motion for Summary Judgment also on April 2, 2020. ECF No. 33.

After considering the motions, the Court directed Plaintiff and Defendants Murch and Thompson to file supplemental briefing explaining whether Michigan's statute against resisting and obstructing arrest, Mich. Comp. Laws § 750.479, was applicable and if so, how it affected the analysis of the lawfulness of Barrera's arrest. ECF No. 45. The parties filed their supplemental briefing and the motions are now ready to be addressed.

**II.**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

**III.**

The relationship between this proceeding and the prior proceedings of the Michigan Court of Appeals and the state trial court will be first addressed. Though the Michigan Court of Appeals already concluded that the Defendant officers lacked probable cause to arrest Plaintiff, the doctrine of collateral estoppel does not prevent this Court from reaching a different conclusion. Collateral estoppel prevents a party from relitigating an issue of law or fact that a prior case has already resolved. *New Hampshire v. Maine*, 121 S.Ct. 1808, 1814 (2001). Under Michigan law, issue preclusion applies when "1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (2001) (citing *People v. Gates*, 452 N.W.2d 627, 630–31 (Mich. 1990)). Federal courts should give effect to state collateral estoppel law when a state court judgment would do so. *Haring v. Prosise*, 103 S. Ct. 2368, 2373 (1983).

The Sixth Circuit has held that in a §1983 action, collateral estoppel cannot be used against a defendant officer. *Burda Bros., Inc. v. Walsh*, 22 F. App'x 423, 430 (6th Cir. 2001) (reasoning that collateral estoppel did not apply in a §1983 case when the defendant officer was not a party in the initial suit and should have a "full and fair opportunity to be heard."). In the present case, MPPD officers Thompson and Murch and Isabella correctional officers Cluley and Eggers are not bound by the Michigan Court of Appeals judgment. The four officers, in their individual capacities, were not party to or in privy to a party in the criminal proceedings. Plaintiff cannot use issue preclusion offensively against the Defendant officers in their individual capacities. To do so would deny the officers a full and fair opportunity to be heard as they were not a party to the criminal case.

Additionally, Plaintiff cannot use issue preclusion against either Isabella County or the City of Mt. Pleasant (the "City") because Plaintiff has not satisfied two of the four elements required. First, there is no identity of parties across the proceedings. The parties in the criminal action were the State of Michigan and Plaintiff. Neither Isabella County nor the City were parties in the criminal trial. Further, as neither Isabella County nor the City were party to the first case, they did not have a full and fair opportunity to litigate the issue. Because Plaintiff is unable to meet all four elements for issue preclusion, he cannot stop Defendants from relitigating issues raised previously in the criminal proceedings.

## IV.

The motion for summary judgment filed by Defendants Murch and Thompson will be first addressed. They contend that they are entitled to qualified immunity, which is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985). The doctrine protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The existence of qualified immunity depends on whether a defendant's action violated clearly established law. *Id.* at 243–44. "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999). "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what

he is doing violates that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Court has discretion regarding the sequence with which to conduct the analysis. *Pearson*, 555 U.S. at 236.

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The relevant inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

**A.**

Murch and Thompson claim that they did not violate Barrera's constitutional rights because they were permitted to temporarily detain Barrera to obtain his fingerprints pursuant to *Hayes v. Florida*, 470 U.S. 811, 816 (1985). The Court rejected this argument in its previous order, finding the facts of this case to be too dissimilar to the situations addressed by *Hayes*. ECF No. 45 at PageID.2527.

In the alternative, Murch and Thompson contend that probable cause existed to detain and arrest Barrera. The Fourth Amendment to the U.S. Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized". *U.S. Const. amend. IV*. Probable cause for arrest "is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.* (quoting *U.S. v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)). "A police officer determines the existence

of probable cause [for an arrest] by examining the facts and circumstances within his knowledge that are sufficient to inform 'a prudent person, or one of reasonable caution,' that the suspect 'has committed, is committing, or is about to commit an offense.'" *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Probable cause is determined by considering the "totality of the circumstances." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).

**1.**

The Officers argue that probable cause existed because:

> Not only was the vehicle leaving a known drug house, but it was being driven by a person without a driver's license, and Plaintiff had suspicious items on his person, including a large sum of cash and 11 plastic baggies. Plaintiff provided false or misleading information about the source of the money, implying it was his "per cap," despite not being a tribe member. All three of the other individuals in the vehicle had committed criminal actions. Considering that Plaintiff and others in the vehicle also attempted to deceive officers as to Plaintiff's identity, there were clear reasons to suggest Plaintiff was engaged in criminal conduct.

ECF No. 33 at PageID.2056-57. The trial court summarized the situation as follows:

> The driver, Mr. Garcia, no license. Mr. Pelcher, parolee, drunk. Ms. Guerrero gives a false name, has warrants. And then the Defendant basically says I'm a passenger, I don't have to tell you anything.

ECF No. 44-4 at PageID.2407.

While it is less than clear that the trial court found probable cause for the officers to arrest Barrera, it did find the detention to determine Barrera's identity lawful. It quoted at length *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty*, a case in which the Supreme Court determined that an officer's arrest of an individual for the individual's refusal to identify themselves during a valid *Terry* stop did not violate the individual's Fourth Amendment rights. In *Hiibel*, the police responded to a phone call reporting that a man was assaulting a woman in a truck on the side of the road. The officers arrived at the scene and one of the officers asked the man to

identify himself. The man refused to identify himself despite several requests from the officer asking him to do so. The man began taunting the officer "by placing his hands behind his back and telling the officer to arrest him and take him to jail." *Id.* at 181. This continued until the officer arrested the man for failure to identify himself in violation of Nevada Revised Statutes § 171.123 which provides in part:

> 1. Any peace officer may detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime.
>
> \*\*\*
>
> 3. The officer may detain the person pursuant to this section only to ascertain the person's identity and the suspicious circumstances surrounding the person's presence abroad. Any person so detained shall identify himself or herself, but may not be compelled to answer any other inquiry of any peace officer.

Nev. Rev. Stat. Ann. § 171.123. The man was convicted for violating § 171.123 and appealed his sentence.

The Supreme Court affirmed his conviction, holding that the "principles of *Terry* permit a State to require a suspect to disclose his name in the course of a *Terry* stop." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 187 (2004). The Court explained:

> Our decisions make clear that questions concerning a suspect's identity are a routine and accepted part of many *Terry* stops. See *United States v. Hensley,* 469 U.S. 221, 229, 105 S.Ct. 675 (1985) ("[T]he ability to briefly stop [a suspect], ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice"); *Hayes v. Florida,* 470 U.S. 811, 816, 105 S.Ct. 1643 (1985) ("[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information"); *Adams v. Williams,* 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time").

> Obtaining a suspect's name in the course of a *Terry* stop serves important government interests. Knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder. On the other hand, knowing identity may help clear a suspect and allow the police to concentrate their efforts elsewhere. Identity may prove particularly important in cases such as this, where the police are investigating what appears to be a domestic assault. Officers called to investigate domestic disputes need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim.

*Hiibel*, 542 U.S. at 186.

The Court further held that, "[A]n officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop." *Hiibel*, 542 U.S. at 188 (2004). The Court found that "[t]he officer's request was a commonsense inquiry, not an effort to obtain an arrest for failure to identify after a *Terry* stop yielded insufficient evidence." *Id.* at 189.

**2.**

In *Hiibel*, at issue was the constitutionality of Nevada's "stop and identify" statute. Though Michigan does not have a "stop and identify" statute, it does have a statute against resisting and obstructing arrest. The statute provides:

> A person shall not knowingly and willfully do any of the following…Assault, batter, wound, obstruct, or endanger a[n]…officer or duly authorized person serving or attempting to serve or execute any process, rule, or order made or issued by lawful authority or otherwise acting in the performance of his or her duties.

Mich. Comp. Laws § 750.479 (1)(a).

The Michigan Supreme Court previously found that an individual falsely identifying themselves did not constitute obstructing arrest.

> Under the plain meaning of M.C.L. § 750.479, conduct that rises to the level of threatened or actual *physical* interference is proscribed. Michigan's "resisting and obstructing" statute does not proscribe *any* manner of interference with a police officer, and it also does not proscribe *only* conduct that poses a threat to the safety of police officers; rather, it proscribes threatened, either expressly or impliedly,

> physical interference and actual physical interference with a police officer. Defendant's conduct did not constitute threatened or actual physical interference. Therefore, defendant did not "obstruct" the police officer, within the meaning of M.C.L. § 750.479, when he lied to him.

*People v. Vasquez*, 465 Mich. 83, 100 (2001) (emphasis in original).

The trial judge in this case came to a similar conclusion. The transcript provides:

> And in a four-three decision of the Michigan Supreme Court, they what they did was they looked at the language of obstruct, resist, oppose, and they basically concluded that you had to have either some sort of physical confrontation or potential threat of some sort of physical confrontation for obstruct to be operative. And lying about your ID, they said that just doesn't do it.
>
> So if you analogize to not disclosing who you are, from my perspective it's similar to lying about your ID. So that particular argument just doesn't work under the *Vasquez* opinion; even though I never really agreed with the Supreme Court ruling, but it was a four-three decision and that's the law in the state of Michigan. So think [sic] if you opt not to tell your name, I don't think you can be prosecuted for R and O.

ECF No. 44-4 at PageID.2401.

However, the trial judge did not consider the fact that a year after the Michigan Supreme Court's decision in *Vasquez*, the Michigan legislature had amended the resisting and obstructing arrest statute. The Sixth Circuit noted this in *United States v. Blomquist*.

> In response to *Vasquez,* the Michigan legislature enacted § 750.81d(1) and amended § 750.479, opting to define the term "obstruct" as including "the use or threatened use of physical interference or force *or a knowing failure to comply with a lawful command.*" M.C.L. § 750.479(8)(a) (emphasis added). Looking at the plain language of § 750.479, the offense does not require a use or threatened use of force. Rather, a person can violate the statute simply by "knowing[ly] fail[ing] to comply with a lawful command."

*United States v. Blomquist*, 356 F. App'x 822, 826 (6th Cir. 2009). As explained by the Sixth Circuit, the statute now defines "obstruct" as including "the use or threatened use of physical interference or force or a *knowing failure to comply with a lawful command*." Mich. Comp. Laws § 750.479 (8)(a) (emphasis added). Courts have interpreted this to permit a finding of resisting and

obstructing arrest when an individual refuses to identify themselves. *See Devoe v. Rebant,* 2006 WL 334297, at *4 (E.D. Mich. Feb. 13, 2006) (holding that police had probable cause to arrest an individual that did not comply with multiple requests to identify himself) ("By modifying the statute, particularly by defining 'obstruct' to include a 'knowing failure to comply with a lawful command,' the Court believes the legislature intended the statute to specifically encompass nonphysical-for example verbal-interferences with an officer's performance of his or her duties."); *Chesney v. City of Jackson*, 171 F. Supp. 3d 605, 630 (E.D. Mich. 2016) ("Indeed, the case law lends support to the proposition that a refusal to comply with a police officer's request for identification, without more, may provide probable cause to arrest the non-compliant individual for resisting and obstructing a police officer in the performance of his duties.").

Murch and Thompson argue that they had probable cause to detain and arrest Barrera because he refused to identify himself and Barrera's identity was reasonably related to their investigation to determine the owner of the vehicle that Pelcher had been operating without a license. They cite to M.C.L. § 257.904 which provides:

> A person shall not knowingly permit a motor vehicle owned by the person to be operated upon a highway or other place open to the general public or generally accessible to motor vehicles…within this state by a person whose license or registration certificate is suspended or revoked, whose application for license has been denied, or who has never applied for a license, except as permitted under this act.

Mich. Comp. Laws § 257.904(2). The Officers contend that their request for Barrera's identity was part of their investigation to determine the owner of the vehicle. Because Barrera did not comply with their "lawful command" that he identify himself, they had probable cause to arrest him for obstructing arrest.

In his supplemental briefing, Barrera contends that a law enforcement officer's request that an individual identify themselves is not a "lawful command" as provided under Michigan's

- 16 -

resisting and obstructing arrest statute. ECF No. 46. He identifies M.C.L. § 750.479c as establishing that an individual is not required to identify themselves under Michigan law. The statute provides:

> **750.479c Concealing material facts, making false or misleading statements, or providing false or misleading writings or documents during a criminal investigation; penalty; exceptions**
>
> (1) Except as provided in this section, a person who is informed by a peace officer that he or she is conducting a criminal investigation shall not do any of the following:
>
>> (a) By any trick, scheme, or device, knowingly and willfully conceal from the peace officer any material fact relating to the criminal investigation.
>>
>> (b) Knowingly and willfully make any statement to the peace officer that the person knows is false or misleading regarding a material fact in that criminal investigation.
>>
>> (c) Knowingly and willfully issue or otherwise provide any writing or document to the peace officer that the person knows is false or misleading regarding a material fact in that criminal investigation.
>
> \*\*\*
>
> (4) This section does not prohibit a person from doing either of the following:
>
>> (a) Invoking the person's rights under the Fifth Amendment of the constitution of the United States or section 17 of article I of the state constitution of 1963.
>>
>> (b) *Declining to speak to or otherwise communicate with a peace officer concerning the criminal investigation.*

Mich. Comp. Laws Ann. § 750.479c (emphasis added).

Barrera argues that,

> It is undisputed that the Defendants were conducting an investigation when they pulled the vehicle over and questioned all of the occupants, including Mr. Barrera…Mr. Barrera simply refused to identify himself and MCL 750.479c(4)(b) gives him that RIGHT under Michigan law. In other words, Mr. Barrera exercised his right to decline "to speak to or otherwise communicate with a peace officer concerning the criminal investigation."

- 17 -

ECF No. 46 at PageID.2534 (emphasis in original). Barrera acknowledges that he could not locate "any case law interpreting MCL 750.479c(4)(b)," but that "the statutory language standing on its own is clear and unambiguous." *Id.* at PageID.2535.

Barrera's interpretation is contrary to the function of *Terry* stops and existing precedent. As the Supreme Court stated in *Hiibel*, "Our decisions make clear that questions concerning a suspect's identity are a routine and accepted part of many *Terry* stops." *Hiibel*, 542 U.S. at 187 (citing *United States v. Hensley,* 469 U.S. 221 (1985); *Hayes v. Florida,* 470 U.S. 811 (1985); *Adams v. Williams,* 407 U.S. 143 (1972)). Adopting Barrera's interpretation of MCL 750.479c(4)(b) would permit an individual to refuse to speak to an officer during a *Terry* stop, frustrating an important avenue given to law enforcement officers to obtain information about a situation. Furthermore, other courts in the Eastern District of Michigan have determined that an individual's refusal to identify themselves may be a violation of Michigan's resisting and obstructing statute. *See Combs v. City of Birmingham*, 2013 WL 4670699, at *9 (E.D. Mich. Aug. 30, 2013) ("[D]emanding and obtaining certain identifying information from a suspect may be a critical and legitimate component to a *Terry* stop."); *Chesney v. City of Jackson*, 171 F. Supp. 3d 605, 630 (E.D. Mich. 2016). MCL 750.479c(4)(b) does not upset the important interests permitted by *Terry* stops.

In this case, Officers Murch and Thompson satisfied the requirements in *Hiibel* because MCL § 750.479 prohibits an individual from refusing to comply with a law enforcement officer's lawful command. The Officers' request for identification was reasonably related to the circumstances justifying the stop. The Officers conducted the traffic stop in the first instance because the vehicle was speeding. After determining that Pelcher, the driver, was unlicensed, the Officers attempted to identify the owner of the vehicle. The Officers' sought to identify Barrera as

part of their attempt to identify the vehicle owner. It is reasonable that the officers considered him to be a potential owner of the vehicle. The Officer's believed the registered owner, Sheahan, to be a tribal member and Barrera was in possession of alleged per cap money that was distributed by the tribe. Additionally, Barrera was in the vehicle at the time of the traffic stop. Accordingly, the Officers are entitled to qualified immunity because they had probable cause to arrest Barrera owing to this refusal to identify himself.

**B.**

A finding of qualified immunity in this case is further supported by the fact that the law of probable cause and an individual's refusal to identify themselves is not clearly defined. For a law to be clearly defined, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The trial court looked to *Hiibel* and *Hayes* and determined that the arresting officers' actions were lawful. However, the appellate court reached the opposite conclusion. It would be extraordinary to expect law enforcement officers in the field to make determinations in a matter of minutes that judicial officers themselves cannot come to a consensus on after hours of measured consideration of the law and facts. Furthermore, on its face, M.C.L. § 750.479c indicates that an individual cannot be required to identify themselves to law enforcement officers. However, as explained above, this interpretation is contrary to Supreme Court, Sixth Circuit, and Eastern District of Michigan precedent. Such tensions and ranges of debate make this an area of law that is not clearly established.

Because Officers Murch and Thompson had probable cause to arrest Barrera, the first count of Barrera's complaint will be dismissed against Murch and Thompson. The remaining state law claims against Murch and Thompson, gross negligence and intentional infliction of emotional distress, will also be dismissed against them since probable cause existed for Barrera's arrest.

**V.**

The remaining Defendants will be dismissed. Defendants Cluley and Eggers' only interaction with Plaintiff was booking Barrera into the Isabella County Jail. Because the arresting officers, Murch and Thompson, had probable cause to arrest Barrera, Cluley and Eggers committed no constitutional violation against Barrera nor were they negligent or liable for intentional infliction of emotional distress.

Defendants Mount Pleasant and Isabella County are not liable for false arrest, municipal liability, gross negligence, or intentional infliction of emotional distress since probable cause existed for Barrera's arrest.

**VI.**

Accordingly, it is **ORDERED** that Defendants' Motions for Summary Judgment, ECF Nos. 28, 32, 33, are **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.


Dated: August 5, 2020                    s/Thomas L. Ludington
                                         THOMAS L. LUDINGTON
                                         United States District Judge